# UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | CRIMINAL NO. 06-76-GMS |
| CHIAN SPIRIT MARITIME | * | |
| ENTERPRISES, INC., | * | |
| VENETICO MARINE S/A and M/V | * | |
| IRENE EM, EVANGELOS MADIAS, | * | |
| CHRISTOS PAGONES, | * | |
| | * | |
| Defendants. | * | |

## OPPOSITION OF THE UNITED STATES
## TO DEFENDANT OBJECTIONS AND REQUEST FOR PRETRIAL RULINGS AS TO
## THE ADMISSIBILITY OF PORTIONS OF THE RULE 15 DEPOSITION TESTIMONY

COMES NOW the United States of America, by and through the Assistant Attorney

General for the Environment and Natural Resources Division of the United States Department of

Justice, and the undersigned attorneys, and files this Opposition to the defendant's Motion.

### BACKGROUND

On September 7, 2006, This Honorable Court ordered the government and defendants to

develop an agreement and method for presenting the video-taped Rule 15 deposition testimony at

trial. This order was repeated to counsel for the government and defense during the November 3,

2006 motions hearing.

On October 5, 2006 the defendants provided the government a list of objections. The

defense initially objected to eighty-four (84) separate sections of the video-taped testimony, in

addition to requesting that all of the testimony for the Irene's Second Officer, Gilbert Amaguin,

be stricken. On October 26, 2006 the government provided a written response to the defense,

agreeing to strike sixteen (16) portions of the objectionable testimony. On October 30, 2006, the government also agreed in good faith and pursuant to the defendant's request, to remove the entire video testimony of the Gilbert Amaguin.

On November 2, 2006, the government and defendants held a conference call in an effort to eliminate as many reamining disagreements as possible, to facilitate judicial economy and reduce the Court's burden of reviewing multiple transcripts prior to trial. During that call, counsel for both sides reviewed the defendant's remaining objections for one of the six video-taped witnesses. On November 3, 2006, counsel for both sides repeated the process for two additional witnesses and agreed to continue forging agreements for the three remaining witnesses. However, on November 6, 2006 the defendants filed their above-styled motion in limine.

The video-taped depositions and testimony were taken in the offices of the United States Attorney for the District of Delaware on July 13-19, 2006. A total of seven crew-based witnesses from the vessel Irene testified, and all witnesses required the assistance of an interpreter to both understand the direct and cross-examination questions and to provide their answers.

## GOVERNMENT RESPONSE TO DEFENSE OBJECTIONS AND DEFENSE REQUEST TO REMOVE RULE 15 TESTIMONY

The government now provides a comprehensive response to the separately-styled, witness-by-witness defense objections.

**Pascual Conge**

1. The defense requests the removal of Page 38/line 1 - Page 40 line 7 based on foundation, speculation, hearsay and assuming facts not in evidence.

2

The government agrees to strike this testimony.

2. The defense requests the removal of Page 15/line 2 - Page 17/ line 42 [sic] based on leading, hearsay, lack of foundation and speculation.

The government assumes the defense is referring to Page 17/line 4. The government disagrees with the defense request. The question "how are orders given" does not trigger hearsay, and does not call for speculation. It also does not assume a fact not in evidence because the question "Where does the order start?" is an open-ended question, which follows on other questions about how orders are given on the ship. The "pump out" portion of the question is built on the foundation of questions and answers about pumping out oily bilge waste on pages 12-13. The witness' answers shows that the Chief Engineer provides orders through the chain of command or he writes the orders onto a log book. Prior testimony by this witness makes it clear all of the lower-level engineers are responsible for operating pumps upon orders from higher-level engineers, and all the engineers understand that the orders begin with the Chief Engineer — a party opponent.

3. The defense requests the removal of Page 18/line 9 - Page 20/ line 13 based on leading, hearsay, lack of foundation and speculation.

The government disagrees with the defense request. This is a continuation of the direct examination of the log-book order question. There was no immediate objection to the predicate question: "On the 23rd of November did you see an order from the Chief Engineer in that book? Answer: Yes." The objection was to the answer: "And what did it say?" Mr. Woodward, counsel

3

for the Chief Engineer, a party opponent, objects, citing the "Best Evidence Rule." Mr. Chalos, representing the corporation, then joined in the objection, and now adds "hearsay, foundation and speculation" to the objection. The statement is that of a party opponent, the Chief Engineer. The government does not have in its possession the log book in question, but has made repeated requests to the defendants to produce it. The foundation for this question goes back to pages 11-14 wherein the witness described his duties on the ship in general and his activities on the night of November 23rd related to the pumping out of the bilge tank.

4. The defense requests the removal of Page 25/line 17 - Page 25/ line 21 based on leading.

The government disagrees with the defense request. The government asked this witness to "describe" his prior statement, that he turned on and off the pump. He then describes actions he himself took. This is direct observation testimony, and a witness describing his own actions of what he did on board the vessel, during a specific time and portion of the journey immediately prior to entering U.S. waters.

5. The defense requests the removal of Page 27/line 17 - Page 27/ line 20 based on leading.

The government disagrees with the defense request and with the characterization noted by the defense in footnote 2, page 4 of their request to the Court. The witness is a Third Engineer, who works with pumps of all kinds. (Page 11). He also testified that he is "familiar with the oily water separator and knows what it looks like". (Page 22). This witness testifies in detail about

4

by-passing the oily water separator, and when asked, "Do you know if it worked", he answers: "It's not working." He worked in the engine room and specifically worked on oily waste pumping. This was not a leading question.

6. The defense requests the removal of Page 98/line 20 - Page 100/ line 20 based on hearsay.

The government agrees to strike *from Page 96, Line 12*, through Page 100, Line 20.

**Paul Tudor**

1. The defense argues that Mr. Tudor, the vessel's electrician, is not a qualified Oil Water Separator technician to support their request to remove the below lines of testimony. However, Mr. Tudor testified that he "looked at the separator" with the prior electrician upon boarding the vessel (Page 13), had worked on separators before on other ships to test their alarm or "parts per million" alarm (Page 15-16), talked to both the prior and current chief engineers about the separator's non-function (Page 19-20), participated with the second engineer to explain the electrical portions to him (Page 20), was ordered to re-test the system by the chief engineer (Page 21), and requested a qualified technician to repair the system once he discovered the system was in such a state of disrepair (Page 24).

2. The defense requests removal of Page 22/lines 15-18.

The government agrees to strike this testimony..

3. The defense requests removal of Page 88/lines 10-16.

The government disagrees with the defense request. The government's re-direct follows an extensive cross-examination by the defense regarding this witness' training in international treaties to prevent ocean and oil pollution. The government asks a question in direct relation to that cross-examination, which was relevant and proper.

4. The defense requests removal of Page 19/lines 2-13.

The government agrees to strike this testimony.

5. The defense requests removal of Page 69/line1 - Page 70/line 6, based on relevance.

The government agrees to strike this testimony.

**Roberto Damasing**

The defense requests the removal of thirty-seven (37) portions of Mr. Damasing's testimony. The government disagrees with the defense's repeated premise that this witness did not have "authority to decide what equipment to use in the engine room", to include the oily water separator. Mr. Damasing and all engine room employees were tasked to do various duties in the engine room and Mr. Damasing testifies to his observations and participation of overboard discharges on the ship, discharges that were ordered by higher-ranking crew members and carried out by Mr. Damasing and various other crew members. Mr. Damasing testified that he had worked on five (5) ships prior to working on the Irene and spent a total of twelve (12) months in the engine room of the Irene.

6

Mr. Damasing testified to the following:

a. Working with oily waste and the oily water separator (page 6)

b. Observed oily waste being off-loaded at a port in Poland in May 2005 (page 7)

c. Described how oily waste was handled and discharged after Poland via the use of a "magic pipe" the witness would attach (page 8-9)

d. Described who would order the discharge (uncharged co-conspirator Second Engineer) (page 9)

e. Described overboard discharges on the final leg of a trip from Brazil to the United States (page 9)

f. After saying he could not remember talking to other engineers about orders to discharge overboard, Mr. Damasing was reminded by government counsel of a prior meeting which included a discussion about the Chief Engineer. Mr. Damasing then recalled a meeting with the Chief Engineer and receiving an oral order to discharge overboard (pages 11-13)

g. Testified that the normal time to complete the discharges was when it was "dark" (Page 13)

h. When asked "why when it was only dark", Mr. Damasing noted it was to avoid being seen by other ships or airplanes (Page 14).

Later, Mr. Damasing obviously became confused, either by the form of the direct question or a loss in the translated words. Although defense directs the court to the transcript at page 39, line 4, a full context of the discussion, in addition to the above (a through h) begins on page 38, line 4.

Q: How many times did [you] see pumping on the Irene during those months.

7

A: Many times.

Q: How many times?

A: All I can tell you is that when we leave port, we start pumping out.

Continuing on Page 39 . . .

Q. Do you remember the trip from Brazil to the United States?

A. Yes.

Q. Do you remember how many times you observed overboard pumping?

A. I can't exactly tell you , because I did not see it.

Continuing on Page 40

Mr. Damasing testifies that he "attached" the magic pipe during the Brazil-to United States voyage, and later, on Pages 42-45, explains that because his shift was in the daytime, the actual pump-outs did not occur until the evening.

Clearly, Mr. Damasing's testimony, beginning on Page 6, through Page 45, describes his direct role in the overboard discharges, to attach the "magic pipe"; his knowledge that the pumping was done at night to avoid detection; and that the pump out procedures were done as a normal course of practice, starting when the vessel left port, with the task beginning on the order of the higher-level engineers. Mr. Damasing's observations of and participation in pump-outs obviously occurred during certain intervals that was dependent upon the coordinated, on-going effort of several overlapping crew members.

Due to the number and frequency of the defense objections to Mr. Damasing's testimony, the government provides the below table, which summarizes the defense objections and government response.

8

| General Objection:<br><br>Damasing testified that he "never personally worked on" or had any responsibility regarding the Oily Water Separator. | Disagree. At the very beginning of the government's direct, page 6:<br><br>Q: On the Irene, What other machinery did you work on?<br>A: The main engine, generator engine, auxiliary machines.<br><br>Q: Did you ever have an opportunity to observe or work with the oily waste on the Irene?<br>A: Yes<br><br>Q: Could you describe what you did?<br>A: Before we arrived here in the United States. . . we did a cleaning of the oily water separator.<br><br>The witness goes on to describe in detail how this was done.<br><br>Q: During the 12 months you were at sea on the Irene, did the oily water separator work?<br>A: No.<br><br>This is a continuing effort to eliminate all relevant testimony which showed that the OWS did not work for months prior to the Irene's entry to the U.S.<br><br>Regarding the objection based on the testimony of page 39, the witness clarifies on page 42 that his role was to attach the magic pipe. Every objection that follows related to the witness' observations, duty hours, etc. is then properly re-directed and clarified. |
| Page 6, 8, 9 | Disagree. Each question and answer relates to a direct observation of the witness related to oily waste and how it was handled on the vessel. |
| Page 22 (identification of the pipes and metal flanges) | Disagree. The foundational questions are sufficient: "Do you recognize what has been marked?" What is it?" Again, the witness is giving testimony of his direct observations, where he saw them, when he saw them, etc. |

| Page 32 | Disagree.  The witness is states that he wrote down information about the non-working OWS in his statement.  Does the objection go to the written statement or to the testimony about the statement?  I assume the best evidence is that of the live testimony. |
|---|---|
| Page 34 | Agree. |
| Page 35-37 | Agree. |
| Page 37-38 | Disagree.  He is testifying to direct knowledge and observation.<br><br>All of the questions related to pump-outs go back to the foundational question: "Did you have an opportunity to observe or handle oily waste on the Irene." |
| Page 44-45 | Disagree.  Mr. Chalos immediately took up the issue of duty times and pump-outs during the night shift upon cross-examination.  The foundation for this was set on Page 13 regarding pumping only at night.  This line of direct placed the activity during a specific voyage — from Brazil to the U.S. |
| Page 73 | Disagree.  Mr. Woodward asks the same question as the government regarding the witness' knowledge of whether the OWS worked.  This time, the question is whether it worked when the witness boarded the vessel in China.  If Mr. Chalos doesn't want testimony about a non-working OWS to come in, he must show that the witness had no direct observation of the OWS and its function.  This witness is a mariner, who actually worked on the piece of machinery and connected a piping system to by-pass it.  He has the knowledge and the direct observation to be a valid witness and this question is ---- again ----- proper. |
| Page 74, lines 1-7 | Disagree.  Mr. Woodward correctly establishes with this witness that the former CE Tomondong also ordered overboard discharges.  The witness had direct knowledge of these events. |

| Page 74-80 | Disagree.  This is all directly observed testimony that goes to the Witness Tampering and Conspiracy charges.  The witness observed the OWS not to work and heard the CE tell him to "hide" the magic pipe.  This is relevant, proper testimony. |
|---|---|
| Page 87-89 | Agree. |
| Page 93-95 | Disagree.  This follows a long line of cross examination by Mr. Chalos about the good environmental practices of the corporation. |
| Page 96 | Disagree.  This is a direct "why" follow up question to the cross examination of Mr. Woodward. |
| Page 109-111 | Disagree.  This is a direct follow-up to cross examination on page 66 by Mr. Chalos: "You are here because of the government, isn't that correct?".  Mr. Chalos actually follows this up himself at 113. |
| Page 111-113 | Agree. |
| Page 33. | Disagree.  Christos is a party-opponent. |
| Page 84 | Disagree.  This is a proper refreshed recollection for a witness that is providing technical testimony through an interpreter.<br><br>The cross examination question that leads to the scope of the re-direct is on page 63, line 4.<br><br>Who gave the orders to pump out goes directly to the charged offenses of conspiracy and the APPS count against the corporation. |
| Page 99-102 | Disagree.  These are Mr. Chalos' own questions and go directly to the corporation's environmental practices, knowledge that the OWS didn't work and the witness stands up to the cross examination attempt to sway him from his earlier testimony regarding witness tampering. |

**Edgar Villano**

The defense requests that seven (7) portions of Mr. Villano's testimony be removed, in addition to a document that was placed into evidence by the defense.

The government disagrees with the requested removal of the document placed into evidence by the defense. Counsel for the defense repeatedly used this document, that they had already placed into evidence, as the basis for a cross examination that 1) challenged the veracity of the witness regarding the number of pump-outs he observed; and 2) suggested that the crew's purpose for reporting discharges was due to fear from United States Coast Guard authorities. The fact-finder should be able to view this document.

1. The defense requests removal of page 9/lines 6-20 (relevance)

The government disagrees. This witness identifies a co-conspirator and an agent for the defendant corporation that was involved with the charged offenses.

2. The defense requests removal of page16/lines 4-15 (leading/ foundation/speculation)

The government disagrees. This testimony goes to the corpus of the crime and includes observations of criminal acts and the receipt of orders from the Chief Engineer. The defense could argue the weight of the testimony, but it is a proper direct line of questions.

3. The defense requests removal of page 21/lines 14-21 (leading)

The government disagrees. The witness testifies to pumping at night (page 20), and the government follows with a proper direct question: "Why at night?"

4. The defense requests removal of page 22/lines 4-16 (hearsay/leading)

The government disagrees. The Chief Engineer is a party-opponent and agent of the corporation. The substantive question line: "And did you hear the Chief Engineer speaking. . ." is not improper leading of this witness.

5. The defense requests removal of page 23/line 7 to 24/line 9 (improper use of GJ testimony/improper impeachment/leading)

The government disagrees. This is a refreshed recollection (line 23 "now I remember")

6. The defense requests removal of page 24/lines 16-19 (hearsay)

The government disagrees. The defense did not object on the record and thus, the government did not have an opportunity to establish this witness learned of Mr. Christos' title through unindicted co-conspirators.

7. The defense requests removal of page 25/line 19 to 26/line 12 (hearsay)

The government disagrees. The witness' discussion of a document that he participated in writing, and was urged to write on behalf of a party opponent, is admissible. This witness not only recognizes the document, he is testifying about it's production, which is a factual predicate for the charged offense of witness tampering. This was also a defense-offered piece of evidence.

8. The defense requests removal of page 30/line 4 to 33 line 8 (leading/impermissible use of GJ/improper impeachment)

The government disagrees.  This was a proper refreshed recollection in accordance with FRE 612.

**Mario Manzanilla**

The government disagrees with the premise stated by the defense in its request to exclude portions of Mr. Manzanilla's testimony, to include the assertion on page 2 of their request that Mr. Manzanilla "clearly, concisely and unambiguously testified that he, personally, _**never**_ worked on and or worked with any licensed marine engineers aboard the M/V Irene EM with respect to use and or operation of the oily water separator equipment." (emphasis provided by the defense)

However, Mr. Manzanilla testified that when he boarded the vessel in dry-dock, the oily water separator was not working and in need of repair (Page 7); and that he worked "together for quite some time" with the vessel's Chief Engineer (Page 10).  The witness also testifies that he was given direct orders by the prior Chief Engineer, an agent of the corporation, to assemble the original "magic pipe" system on board the Irene (Pages 10-11).  Therefore, the defense's general predicate for removing portions of Mr. Manzanilla's testimony is without merit.

Due to the number and frequency of the defense objections to Mr. Manzanilla's testimony, the government provides the below table, which summarizes the defense objections and government response:

| General objections related to this witness not having certain responsibilities related to the OWS. Citing transcript at page 31-33. | Disagree.  All of this objection goes to the weight of the testimony.  Although not the primary crew member responsible for the oily water separator, he did observe it, understand its purpose, and he did work in the engine room for 12 months. |
|---|---|

| Specific objections on pages 6, 7, 12, 14, 18, and 42 | Disagree with all objections related to lack of foundation; calls for speculation. |
|---|---|
| | Although not specifically noted in the defense memorandum, the government has reviewed each of these pages for the additional objection related to "strictly inadmissible hearsay." |
| | Page 6- no hearsay<br>Page 7- no hearsay<br>Page 12- Tomondong was a previous Chief Engineer and a co-conspirator. This suffices as an overt act in furtherance of the conspiracy, and the prior Chief Engineer would be considered an un-indicted co-conspirator/Party-opponent. The "news" from the Captain that the next port would be the United States is not hearsay — the Captain was a party-opponent.<br>Page 14 -no hearsay<br>Page 18- exception — Christos Pagones is a Party-opponent<br>Page 42- no hearsay |

| Page 9-12 | Disagree. |
| --- | --- |
| | See **Zaben v. Air Prods. & Chems.**, 129 F.3d 1453 (11th Cir), citing 3rd Cir. **Abrams v. Lightolier Inc.**, 50 F.3d 1204 |
| | The Chief Engineer, Tomondong, was an agent of the Corporation and as such a voice of the party-opponent. Tomondong spoke as an authority or manager of the vessel. Tomondong was an agent of the corporation. |
| | The key part of this analysis goes back to Mr. Chalos' cross examination of the matter (see page 36 of the transcript.) Mr. Chalos asserts that each of the crew-based witnesses had a "duty" to tell either the Captain or the Chief Engineer, as representatives of the corporation, of any illegal activities. |
| Page 42 | Agree. Salary question is irrelevant |
| Page 43 | Disagree. This entire line of re-direct goes back to what the witness observed directly relating to the charged offenses of an APPS and Conspiracy count. |
| Page 48 | Disagree. This entire line of cross-examination provides further context for the normal practice of the crews ---- Two different crews managed by two different management teams of the defendant corporation.    This was relevant. The objection to foundation is not a correct foundation ---- it either goes to the direct examination or it is beyond its scope. In this case, any question about the use and practices of the magic pipe and oily water separator are within the scope of direct. |

**Bryan Espina**

Again, the defense asserts that this witness did not have enough direct observation or responsibility with the oily water separator to testify about it, but in the defense's own submission of Mr. Espina's testimony, there is clear evidence to the contrary:

Q: So when you told Mr. Kotila that the oily water separator didn't work, the only way you know that is because someone else told you that; right? (cross examination by defense)

A: I know that it wasn't working. I saw the second engineer trying to work on it.

Therefore, this witness would obviously not have the responsibility or opportunity to work on a piece of equipment that he observed not to operate.

1. The defense requests removal of Page 16/line 4 - Page 17/line 14.

The government disagrees.  This testimony goes to the written order of a part opponent and description of the order in a log book.  The witness is not confused by the question and states that this was a different log book from the "official" one that was seized and placed into evidence as the "oil record book" by the government.

2. The defense requests removal of Page 5/line 18 - Page 6/line 4 (relevance)

The government agrees.

3. The defense requests removal of Page 12/line 13 - Page 13/line 2 (relevance)

The government disagrees.  The witness identifies a co-conspirator and party-opponent (agent of the corporation).

17

4. The defense requests removal of Page 14/line 18 - Page 16/line 21 (relevance/foundation/hearsay/best evidence rule/speculation)

The government disagrees. Again, this testimony goes directly to orders by agents of the corporation to pump oily waste overboard. The statements described were written by a party-opponent and co-conspirator (the Chief Engineer).

5. The defense requests removal of Page 19/lines 8-16 (leading/lack of foundation)

The government disagrees. This is a proper line of direct, open-ended questions regarding the identification of a marked exhibit:

Q: Take a look right there. Do you recognize what's under that plastic?

Q: What do you recognize it to be?

Q: Do you know what they are?

A: Those are the pipes.

Q: Those are the magic pipes you used on the Irene? (The witness testifies about a "magic pipe at Page 18, line 12)

A: I don't remember anymore because, you know, they were hidden underneath.

Q: Hidden by whom?

A: The —connections were underneath.

6. The defense request removal of Page 20/lines 14-20 (leading/foundation)

The government disagrees. The witness identifies the items as those actually used on the vessel and the government asks:

Q: How do you know?

A: I looked at it before I ran the pumps.

This is direct observation testimony.

7.  The defense requests removal of Page 21/lines 14-16

The government agrees.

8.  The defense requests removal of Page 23/line 24 - Page 25/line 20
(hearsay/foundation/speculation)

The government disagrees.  This is testimony about the statement of a party opponent that goes directly to the charged offenses of conspiracy and witness tampering.

9.  The defense requests removal of Page 63/line 18- Page 64/line 1 (leading/ speculation/ impermissibly calls for a legal conclusion)

The government agrees.

10.  The defense requests removal of various portions of Pages 65-66.

The government agrees that Page 65, lines 4-9 should be stricken as they call for a legal conclusion.  The government also agrees that Page 66, lines 4-24 should be stricken.

However, the government does not agree that Page 65, lines 1-3 should be removed because they identify the corporate defendant.  In addition, Page 65, lines 9-24 and Page 66 lines

19

1-2 identify the agents of the corporation.  This testimony is not based on improper leading

questions, is not speculative and does not call for a legal conclusion.

## CONCLUSION

Based upon the foregoing, the government requests that This Honorable Court deny those

portions of the defense objections herein contested.


RESPECTFULLY,

/s/ Jeffrey L. Phillips

JEFFREY L. PHILLIPS
Trial Counsel
United States Department of Justice
Environmental Crimes Section
Washington, D.C.
(202)305-0354

## CERTIFICATE OF SERVICE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | CRIMINAL NO. 06-76-GMS |
| CHIAN SPIRIT MARITIME | * | |
| ENTERPRISES, INC., | * | |
| VENETICO MARINE S/A and M/V | * | |
| IRENE EM, | * | |
| | * | |
| Defendants | * | |

I, Sharon L. Bernardo, employee with the United States Attorney's Office, hereby certify that on November 14, 2006, I electronically filed the foregoing:

### OPPOSITION OF THE UNITED STATES
### TO DEFENDANT OBJECTIONS AND REQUEST FOR PRETRIAL RULINGS AS TO
### THE ADMISSIBILITY OF PORTIONS OF THE RULE 15 DEPOSITION TESTIMONY

with the Clerk of the Court using the CM/ECF which will send notification of such filing to:

> CARL R. WOODWARD, III, ESQUIRE
> Cwoodward@CarellaByrne.com
>
> GEORGE M. CHALOS, ESQUIRE
> gmc@codus-law.com

/s/ Sharon L. Bernardo